**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Vanguard Transportation
Systems, Inc.,

     Plaintiff,                Case No. 2:04-cv-889

v.

                                JUDGE GRAHAM

Volvo Trucks North America,
Inc.,

     Defendant.

**OPINION AND ORDER**

This matter is before the Court on Defendant Volvo Trucks North America, Inc.'s, a Division of Volvo Group North America, Inc. ("VTNA") motion for summary judgment (Doc. 56). Plaintiff Vanguard Transportation Systems, Inc. ("Vanguard") has also moved this Court for leave to file a sur-reply brief with respect to VTNA's motion for summary judgment (Doc. 65).

**I.   Vanguard's Claims and Procedural Background**

This case concerns numerous commercial truck tractor units ("trucks") assembled by VTNA that Vanguard acquired over a number of years. In Vanguard's Verified Complaint, it alleges that VTNA, itself and through its "agents" Jack Conaghan ("Conaghan") and Kamps Truck Centers, Inc. ("Kamps"), represented, assured, and warranted to Vanguard that the trucks at issue were fully tested; would meet or surpass high industry performance standards with regard to durability, maintenance requirements, and downtime; were improving in quality each year; and would be "defect free." Vanguard argues it relied on these representations in acquiring these trucks though lease-purchase agreements or financing. Vanguard also claims that it informed VTNA, Conaghan, and Kamps of

its intended uses for the trucks and that VTNA warranted that the trucks would be fit for this particular purpose.

Vanguard argues the trucks were materially defective by virtue of the following: "electrical problems, torque problems, water separation for fuel system problems, defective drive shafts, defective differentials, defective release bearings, defective transmissions, cylinder oil distribution problems, defective cabs, fire hazard problems, defective U-bolts, injector problems, poor front end alignment, defective front bumpers, defective side farings, and defective electrical dashboard systems."  Vanguard alleges that VTNA knew or should have known from testing the trucks that they were defective.

Vanguard maintains that due to these defects, it incurred over $500,000.00 in damages resulting from: severe and extensive downtime; cost increases related to having to use more trucks or substitutes; losses from customers refusing to book business that would involve VTNA trucks; a fire causing total loss to one truck; expenses to transport, lodge, and feed drivers abandoned by downed trucks; towing, repair, and labor costs; loss of qualified drivers who refuse to drive the VTNA trucks; and a reduced residual value on the trucks after their leases expired or the financing loans were paid in full.

Vanguard claims:  VTNA has not honored its written warranty to provide it with "defect free" trucks; VTNA failed to abide by its implied and express warranties to provide competitive and tested units; VTNA's limited warranty "failed of its essential purpose," and is not enforceable; VTNA failed to establish a nationwide used truck market as well as a market to support maintenance, repair,

2

and parts systems to support its warranties; and VTNA failed to honor its written warranty when confronted with demands to do so by Vanguard.  Finally, Vanguard claims that when it informed VTNA's president, Mark Gustafson, of the alleged defects, Gustafson promised to remedy the defects, but failed to do so.

Vanguard alleges breach of express warranty and alternatively, breach of contract.  In its alternative breach of contract claim, it states that it entered into an express contract with VTNA to acquire trucks of high quality and that VTNA materially breached this contract by conveying substandard trucks to Vanguard. Vanguard further alleges it was unable to mitigate its damages because VTNA failed to make replacement parts or vehicles available.  Vanguard maintains that it confronted VTNA with evidence of the truck failures and VTNA, through "agents" Kamps and Conaghan, promised to reimburse Vanguard, but has since refused to do so.

Vanguard filed this case in the Western District of Michigan (Doc. 1).  VTNA initially moved for dismissal due to lack of personal jurisdiction and improper venue (Doc. 4).  The court denied VTNA's motion (Doc. 22).  Upon VTNA's motion to change venue pursuant to 28 U.S.C. § 1404(a) (Doc. 23), the case was transferred to this Court (Doc. 33).

## II.  Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See

LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium).

The moving party has the burden of showing that there are no genuine issues of material fact in the case.  LaPointe, 8 F.3d at 378.  The moving party may meet its burden by showing that the nonmoving party lacks evidence to support an essential element of its case.  Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

In response, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)).  The Court must view the evidence, all facts, and any inferences that may permissibly be drawn from the facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992).

In reviewing summary judgment motions, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993)(quoting Anderson, 477 U.S. at 251-52).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

4

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).

Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. See also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994).

Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

### III. <u>Facts of the Case</u>

The following facts have been gleaned from the admissible evidence in this matter, consisting of the evidence presented by VTNA in support of its motion for summary judgment and statements from Vanguard's Verified Complaint that are not conclusory, hearsay, or otherwise inadmissible.

Vanguard is an Ohio corporation with offices in Cincinnati, Ohio. VTNA is a Delaware corporation with its principal place of business in Greensboro, North Carolina. VTNA assembles "heavy trucks, with diesel engines, typically used to haul materials, such as loads of freight, several thousand pounds worth, via attached trailers that commonly are in lengths in the range of 45 to 50 feet." (Def. Mot. for Summ. J., Ex. 2, Second Affidavit of Heino W. Scharf, Feb. 10, 2006 ("Second Scharf Aff.") ¶¶ 5, 9.) VTNA markets and represents that these are fully tested quality trucks, meeting industry standards for corporate vehicles and the attendant

performance requirements. VTNA markets its products in various media markets within the United States through print and television advertising.

Vanguard acquired twenty-one VTNA-assembled trucks, which are the subject of this dispute.[1] (Verified Compl. ¶ 6; Second Scharf Aff. ¶¶ 5-6, Ex. A.) All of the subject trucks were acquired through dealerships in either Ohio or Georgia. One such dealership was Kamps Trucks Centers, Inc. ("Kamps"), owned by James Kamps, in Fairfield, Ohio.

Vanguard claims VTNA made representations through "agents" including Jack Conaghan, the Regional Vice President of Sales for VTNA whose sales territory included Fairfield, Ohio, and Kamps. Vanguard relied on VTNA's advertising and the representations of

---

[1]
In its Verified Complaint, Vanguard asserts it acquired over thirty VTNA trucks during the years of 1998 through 2004. These are ostensibly the units which are the subject of this dispute. However, Vanguard has presented no evidence as to the specific identities or dates in service of each truck it claims was defective.

VTNA, through the affidavit of Heino Scharf, VTNA's Director, Product Assurance, submitted a spreadsheet (Exhibit A to his Affidavit) of VTNA trucks acquired by Vanguard "claimed to be involved in this litigation" ascertained through discovery from Vanguard in this matter. (Second Scharf Aff. ¶¶ 5-6; see also Def. Mot. for Summ. J., Ex. 1, Affidavit of Thomas L. Davis). Exhibit A to Scharf's affidavit "is the referenced compilation of data pertaining to the Vanguard trucks using the VIN numbers supplied to VTNA from information supplied to it in response to discovery." (Id. ¶ 6.) Twenty-one individual trucks are identified in Exhibit A; these trucks were put into service, defined by Scharf as the "date the customer took physical possession of the truck," in 1998, 1999, and 2001. (Id.; Id. at Exhibit A.)

Vanguard has thus failed to show that there is a genuine dispute of material fact as to which VTNA trucks are at issue, how many trucks are at issue, and when these trucks were put into service, and the Court will only consider the twenty-one trucks identified by VTNA in this claim.

The serial numbers of the trucks at issue, with the in-service dates listed in parentheses, are as follows: 238771 (Aug. 31, 1999); 238772 (Aug. 31, 1999); 238773 (Aug. 31, 1999); 308913 (Mar. 19, 2001); 308914 (Mar. 19, 2001); 771016 (May 26, 1998); 771017 (May 26, 1998); 771018 (May 26, 1998); 771019 (May 26, 1998); 771020 (May 26, 1998); 771021 (May 29, 1998); 771022 (May 29, 1998); 771023 (Jun. 4, 1998); 782611 (Oct. 30, 1998); 782612 (Oct. 30, 1998); 782613 (Oct. 30, 1998); 782614 (Oct. 30, 1998); 782615 (Oct. 30, 1998); 782616 (Oct. 30, 1998); 782617 (Oct. 30, 1998); 782618 (Oct. 30, 1998). (Second Scharf Aff. Ex. A.)

VTNA, Kamps, and Conaghan in acquiring the subject trucks. Vanguard would not have decided to acquire these trucks without a system of "product and warranty support." (Verified Compl. ¶ 48.)

Each of the identified Vanguard trucks would have come with a written, limited warranty. The warranty, attached to Scharf's Affidavit as Exhibit B, states in pertinent part:

> [VTNA] warrants each new VN model Volvo truck to be free from defects in material and workmanship under normal use and service up to the periods as specified, provided all required [VTNA] maintenance is followed. All warranty periods are calculated from the date in service . . . .
>
> **1.   Basic Warranty:** 12 Months, or 100,000 Miles, or 161,000 Kilometers, whichever occurs first . . . .
>
> NOTE: LIMITATIONS AND EXCLUSIONS TO THIS WARRANTY APPEAR ON THE REVERSE SIDE OF THIS CERTIFICATE . . . .
>
> THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS OR CONDITIONS, STATUTORY OR OTHERWISE, EXPRESSED OR IMPLIED INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(Second Scharf Aff. Ex. B.) (Emphasis in original.) The warranty also stated,

> THESE LIMITATIONS AND EXCLUSIONS ARE IMPORTANT AND MUST BE READ AND UNDERSTOOD. LIMITATIONS - [VTNA's] obligation is limited to, at its option, repair or replacement of parts which are acknowledged by it to be defective. In the case of acknowledged defective assemblies, exchange with factory rebuilt units may be given . . . . Warranty repairs performed by the dealer's shop in accordance with the terms of the warranty set forth herein are free of charge. Warranty repairs do not constitute an extension of the original warranty period for the vehicle or any part thereof. Warranty consideration can only be given if the deficiency is brought to the attention of an authorized Volvo Truck dealer immediately upon discovery.

7

> ***NO PAYMENT OR OTHER COMPENSATION WILL BE MADE FOR
> CONSEQUENTIAL, INDIRECT OR INCIDENTAL EXPENSES OR DAMAGES
> OF ANY KIND . . . .***
>
> **Exclusions . . . Misc. Expense:** Road service, towing,
> meals, lodging, telephone calls, travel time, loss of
> cargo, downtime, shop supplies, lube oil, lubricants,
> sealers, anti-freeze, filter elements, and labor
> performed by a non-approved location are not covered.

Id. (Emphasis in original.)  Scharf avers that the time periods on
the warranty are "calculated from the date in service."  (Second
Scharf Aff ¶ 7.)

Scharf notes that customers who purchase or acquire a VTNA
truck are to review and sign a warranty registration form,
explaining the limitations of the warranty.  VTNA has provided such
a Warranty Registration, attached as Exhibit C to Scharf's
Affidavit, for truck serial number 782618, purportedly signed by
Menne on behalf of Vanguard, and dated October 30, 1998 (also the
in-service date listed for this truck).

The Warranty Registration states in pertinent part:

> This warranty is an agreement between the purchaser and
> Volvo GM Heavy Truck Corporation[2] and the selling
> authorized VOLVO Dealer.  Warranty protection is an
> essential part of our offer to sell.  We urge every
> prospective buyer of a VOLVO Vehicle to carefully read
> the warranty terms and conditions set forth on the
> warranty certificate.

---

[2]

In his Affidavit, Scharf notes that he currently holds his position with
Volvo Trucks North America, a division of Volvo Group North America, Inc., and
that before being employed by VTNA, he was employed by Volvo GM Heavy Truck
Corporation, and prior to that Volvo White Truck Corporation.  He notes, "[t]he
relationship and connections between these corporate entities is the subject of
complex legal documentation, but these are the entities which essentially
conducted Volvo's manufacturing and sales of trucks in North American over the
time period of 1982 to the present."  (Second Scharf Aff. ¶ 2.)  VTNA does not
contend that it is not responsible for this Warranty Registration because the
Registration names Volvo GM Heavy Truck Corporation.

8

> NO OTHER WARRANTIES EXPRESSED OR IMPLIED INCLUDING
> MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE
> GIVEN BEYOND THOSE SET FORTH THEREIN.
>
> **LIMITATION OF REMEDIES**
>
> IN NO EVENT SHALL VOLVO GM TRUCK CORPORATION OR ITS
> DEALERS BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES
> INCLUDING LOSS OF INCOME, DOWNTIME EXPENSES AND ANY OTHER
> COMMERCIAL LOSSES UNLESS EXPRESSLY PROVIDED OTHERWISE IN
> THIS WARRANTY.  THE BUYER'S REMEDY IS LIMITED TO REPAIR
> OR REPLACEMENT OF THE PART OR COMPONENT WHICH IS
> DETERMINED DEFECTIVE IN NORMAL USE.  THE TRUCK WARRANTY
> CERTIFICATE CONTAINS THE SOLE AND EXCLUSIVE WARRANTY FOR
> VOLVO TRUCKS.
>
> **PURCHASER**
> ON THE DATE OF THE SALES ORDER I HAVE READ THE WARRANTY
> CERTIFICATE AND UNDERSTAND AND ACCEPT THE TERMS AND
> ACKNOWLEDGE RECEIPT OF THIS AGREEMENT THROUGH MY
> SIGNATURE BELOW . . . .
>
> The vehicle is fully registered for Volvo GM Heavy Truck
> Corporation warranty coverage as of delivery date shown
> below.

(Id. Ex. C.)  (Emphasis in original.)

Scharf testifies that if VTNA were notified of any breach of warranty obligations, that most likely he would have been informed as the manager of the product assurance group.  The first time Scharf learned of any claimed breaches of warranty with respect to the Vanguard trucks in this matter was when Vanguard filed its Verified Complaint.

Scharf further testifies that the warranty claims history VTNA has on the subject trucks shows that any repairs were completed per the terms of the written, limited warranty.  Finally, VTNA asserts that its trucks are sold or leased by independent dealers who do not have any authority to vary the terms of VTNA's written Warranty Certificate or to bind VTNA to an extended or different warranty.

9

**IV.** <u>**Evidence Properly Before The Court**</u>

Rule 56(e) of the Federal Rules of Civil Procedure states in pertinent part that "affidavits shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e).  Further, when a motion for summary judgment is made and properly supported, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  <u>Id</u>.

**A.   Vanguard's Verified Complaint**

Vanguard submitted its allegations in this case through a verified complaint signed by its President, Douglas J. Menne.  To the extent the Verified Complaint contains facts based on Menne's personal knowledge, the Court may consider these facts as proper evidence under Rule 56(e) in deciding VTNA's motion for summary judgment.  <u>Hooks v. Hooks</u>, 771 F.2d 935, 945-46 (6th Cir. 1985).

However, "[n]on-specific, conclusory statements will not overcome a properly supported motion for summary judgment." <u>Hunter v. Trussel</u>, No. 2:03-cv-972, 2006 U.S. Dist. LEXIS 25839 at *4 (S.D. Ohio May 2, 2006); <u>Mitchell v. Toledo Hosp</u>., 964 F.2d 577, 584-85 (6th Cir. 1992) (an affidavit which contained "nothing more than rumors, conclusory allegations and subjective beliefs . . . [is] wholly insufficient to establish a claim as a matter of law"). Accordingly, to defeat VTNA's motion for summary judgment, Vanguard must present specific, non-conclusory evidence of VTNA's breach of express warranty or breach of contract.

**B.   Affidavit of Vanguard's President, Douglas Menne**

Vanguard purports to rely upon the Affidavit of its President, Menne, in opposing VTNA's motion for summary judgment (Pl. Br. in Opp. to Mot. for Summ. J. Ex. 1, Affidavit of Douglas J. Menne, March 16, 2006 ("Menne Aff").)  VTNA objects to the admission of this Affidavit, stating that it was not properly signed and was not notarized.  Menne affirmed the Affidavit under penalty of perjury, stating "I, Douglas J. Menne, do hereby affirm under penalty of perjury that" followed by eighteen paragraphs of assertions. The Affidavit, however, was not notarized, nor signed by Menne, although there is an "electronic" signature notation.[3]

The Sixth Circuit has stated, "[a]n unsworn affidavit cannot be used to support or oppose a motion for summary judgment." Pollock v. Pollock, 154 F.3d 601, 612, n. 20 (6th Cir. 1998). Alternatively, this "Affidavit" could be considered an unsworn declaration under 28 U.S.C. § 1746, which permits courts to rely on unsworn, signed declarations as evidence in deciding motions for summary judgement under Rule 56 if the declaration is:  1) in writing, 2) dated, and 3) verifies that its content is "true under penalty of perjury."  28 U.S.C. § 1746; Pollock, 154 F.3d at 612, n. 20 (stating "a statutory exception to this rule exists which permits an unsworn declaration to substitute for a conventional affidavit if the statement contained in the declaration is made under penalty of perjury, certified as true and correct, dated, and signed").

Menne's Affidavit, however, does not comport with the

---

[3]

The affidavit was dated March 16, 2006 and was "electronically" signed via the "/s/" notation adjacent to Menne's typewritten name in a cursive-style font, above his typewritten name in a print-style font.

statutory requirements in 28 U.S.C. § 1746 such that it could be considered evidence in the manner of a declaration.  The document was not physically signed by Menne, but rather electronically signed by Menne.  In this District, "if an original document requires the signature of a non-attorney, the filing party or the Clerk's Office shall scan the original document, then electronically file it on the System."  Electronic Filing Policies and Procedures Manual for the United States District Court for the Southern District of Ohio, Rule C, Signatures; see also S.D. Ohio Civ. R. 1.1(e) (stating the Local Rules are "supplemented by the "Electronic Filing Policies and Procedures Manual").[4]  The document was not properly signed in compliance with the rules of this District, and will not be considered as evidence under Rule 56 for purposes of opposing VTNA's motion for summary judgment.  See Watson v. The City of Mason, No. C1-04-283, 2005 U.S. Dist. LEXIS 27116 at **9-10 (S.D. Ohio Nov. 9, 2005) (finding that affidavits which were not notarized and contained electronic "signatures," instead of the actual signatures of the affiants, were not signed and therefore were not proper evidence under Rule 56).

Even if the document were properly before the Court, it consists largely of hearsay or broad conclusions, in some cases copied verbatim from the Verified Complaint, which courts are precluded from entertaining in ruling on a motion for summary judgment.  Lee v. Ritter, No. 1:02-cv-282, 2005 U.S. Dist. LEXIS

---

[4]     The ECF Manual also states that anyone who disputes the authenticity of an electronically filed document or the signature thereon must file an objection within ten days of receiving the notice of filing of the document.  Here, Vanguard filed its opposition to VTNA's motion for summary judgment on March 16, 2006, including as evidence Menne's Affidavit.  VTNA filed its reply wherein it objected to the form of Menne's Affidavit on March 23, 2006.

34988 at **9-10 (E.D. Tenn. Dec. 12 2005) ("[h]earsay statements
which are inadmissible under the Federal Rules of Evidence and mere
conclusory allegations made in a verified complaint are
insufficient to withstand a summary judgment motion") (citing
Hamilton v. Roberts, No. 97-1696, 1998 U.S. App. LEXIS 22653 at *5
(6th Cir. Sept. 10, 1998)).

At most, under Federal Rule of Evidence 802 pertaining to
hearsay, Menne's allegations that he informed VTNA or its "agents"
of the problems Vanguard was having with the trucks could only be
admitted to show that VTNA was on notice of the alleged problems,
not that the problems themselves had actually occurred as alleged
in his defective Affidavit.

C.   **The Menne Letters**

Vanguard submits as Exhibit 2 to its Brief in Opposition,
nineteen dated letters from Menne ("Menne Letters") to "Defendant
which set forth the numerous defects of the trucks." (Pl. Br. in
Opp. at 21-22.)  Of the nineteen letters, six do not list VTNA or
any purported VTNA employee, such as Conaghan, as a recipient or
carbon-copied recipient.  Still five additional letters list a
carbon copy recipient as simply "President of Volvo North
American," or "Office for the President for Volvo of North
America," or "Volvo."  Finally, a majority of the letters, ten of
the nineteen, are addressed to a "Worldwide Equipment, Inc.," in
Cincinnati, Ohio.  The only references in the record to Worldwide
are in the Menne Affidavit which states that VTNA told Vanguard
"Worldwide would be a major improvement over the existing dealer
availability in the Cincinnati market," and that Worldwide invited
Menne to a seminar introducing it as an "extremely successful

13

dealer" to the Cincinnati market.   (Menne Aff. ¶¶ 10-11.)

VTNA objects to the admission of the Menne Letters as evidence supporting Vanguard's Brief in Opposition, asserting that the letters constitute hearsay and that they were not properly authenticated.

The Menne Letters were not authenticated by any affidavit, including the purported Menne affidavit discussed <u>supra</u>.  As such, the Menne Letters are inadmissible for purposes of this summary judgment motion.  <u>Williams v. United Dairy, Inc</u>., No. 2:03-cv-868, 2005 U.S. Dist. LEXIS 9349 at *5 (S.D. Ohio Apr. 18, 2005 ) ("to be admissible for summary judgment purposes, 'documents must be authenticated by and attached to an affidavit' . . . [and] 'a letter submitted for consideration under Rule 56(e) must be attached to an affidavit and authenticated by its author in the affidavit or deposition'") (citations omitted); <u>Steele v. Jennings</u>, No. 2:04-cv-189, 2005 U.S. Dist. LEXIS 18703 at *3 (S.D. Ohio Aug. 31, 2005) (granting defendants' motion to strike in its entirety and refusing to consider plaintiff's exhibits when ruling on defendants' motion for summary judgment where plaintiff failed to authenticate the exhibits via an attached affidavit that met the requirements of Rule 56(e), noting "[u]nauthenticated exhibits are not proper evidence for opposing or supporting a summary judgment motion").

VTNA also objects to the consideration of these letters on the basis that they are largely composed of hearsay.  This is the sole evidentiary insufficiency argument to which Vanguard responded in its proffered sur-reply brief, which will be discussed in greater detail, <u>infra</u>.  Vanguard maintains that the letters are not hearsay

because they reflect on the notice issue or that they are business records and are therefore an exception to the hearsay rule.

Federal Rule of Evidence 803(6) defines the exception to the hearsay rule for business records "kept in the course of a regularly conducted business activity." The rule requires the party introducing the business records to show "by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12) or a statute permitting certification" that the making of the records complied with the requirements of the rule. In other words, Vanguard needed someone qualified to testify that the letters were made by a person with knowledge and kept in the course of regularly conducted business activity, which it has not done.

This Court finds VTNA's objection to the Menne Letters well taken and will not consider these letters as evidence in deciding this motion.

**D.   Vanguard's Motion to File a Sur-Reply Brief**

On June 22, 2006, pursuant to S.D. Ohio Civ. R. 7.2(a)(2), Vanguard requested leave of this Court to file a sur-reply brief opposing VTNA's motion for summary judgment (Doc. 65). This Court has reviewed Vanguard's Motion and its proffered Sur-Reply, as well as VTNA's objections to Vanguard's Motion (Doc. 67).

Rule 7.2(a)(2) of this District's rules of procedure states that "[n]o additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown." Vanguard asserts that good cause exists for which this Court should allow it to file its Sur-Reply because it "has an obligation to respond to the inaccuracies contained in Defendant's Reply Brief."

15

(Pl. Mot. to File Sur-Rep. at 1.)  Good cause does not exist to permit Vanguard to merely rehash the arguments it fully briefed in its opposition.

Vanguard does, however, briefly address VTNA's objections to the Menne Letters in its proposed Sur-Reply Brief, and the Court has considered these arguments in ruling on the objections.  The Motion for Leave to File a Sur-Reply Brief is granted insofar as the Sur-Reply Brief responds to VTNA's objections to the evidence Vanguard offered in opposition to VTNA's Motion for Summary Judgement.  It should be noted that Vanguard's proffered Sur-Reply fails to address the specific grounds of VTNA's objection to Menne's Affidavit, but only states that its arguments pertaining to the Menne Letters "would also apply" to VTNA's objection to the Menne Affidavit. (Mot. to File Sur-Rep. Ex. A, Proffered Sur-Rep. at 8.)

## V.    **Legal Analysis**

### A.    **Choice of Law**

The parties have not raised, nor analyzed, which state's laws govern the claims in this dispute.  VTNA appears to argue that it is entitled to summary judgment under Ohio law, while Vanguard cites to cases from numerous jurisdictions, but does not appear to dispute that Ohio law should govern this case.  Additionally, in its Verified Complaint, Vanguard claims that VTNA breached express warranties as defined in the Michigan Complied Laws § 440.2313.

A federal court sitting in diversity applies the choice of law provisions of the state in which it sits.  <u>Rosen v. Chrysler Corp</u>., 205 F.3d 918, 921 n.2 (6th Cir. 2000) (citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co</u>., 313 U.S. 487, 496 (1941)).  When an action is

transferred pursuant to 28 U.S.C. 1404(a), however, the transferee court must apply the choice of law provisions which the transferor court would have applied, had the case not been transferred.  Id. (citing Ferens v. John Deere Co., 494 U.S. 516, 523 (1990)); Bristol West Ins. Co. v. Whitt, 406 F. Supp. 2d 771, 786 (W.D. Mich. 2005).

Vanguard initially brought this diversity action in the Western District of Michigan, but the court transferred the action to this Court pursuant to 28 U.S.C. 1404(a).  As the transferee court sitting in diversity, this Court must apply Michigan's choice of law provisions to determine which state's substantive law governs this dispute.

It seems that Vanguard's breach of express warranty claim is based on contract law, and Vanguard has not argued otherwise. Michigan law, the law of the transferor court's forum, governs whether an action can be characterized as one in contract or one in tort.  Mahalsky v. The Salem Tool Co., 461 F.2d 581, 583-84 (6th Cir. 1972) ("questions relating to the form of the action, i.e. the remedy, are procedural and are to be determined by the law of the forum") (citing Bank of U.S. v. Donnally, 33 U.S. 361 (1834); LeRoy v. Beard, 49 U.S. 451 (1850); Willard v. Wood, 135 U.S. 309 (1890); Marks v. Kindel, 41 F.2d 584, 585 (6th Cir. 1930)).

Under Michigan law, an action to recover for economic loss caused by a defective product, as opposed to personal injury, is exclusively remedied under the Uniform Commercial Code.  Neibarger v. Universal Coops., Inc., 486 N.W.2d 612, 615 (Mich. 1992) ([w]here the claims . . . arise from a commercial transaction in goods and the plaintiff suffers only economic loss . . . such

[tort] claims are barred by the economic loss doctrine") (citations omitted). The economic loss doctrine states that "'where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has only suffered economic losses.'" Id. (citing Kershaw County Bd. of Ed. v. United States Gypsum Co., 396 S.E.2d 369 (1990) (citations omitted)). Therefore, Vanguard's breach of express warranty claim must be analyzed under contract law as Vanguard is barred from pursuing a tort remedy by the economic loss doctrine.

With respect to choice of law issues involving disputes sounding in contract law, the Michigan Supreme Court has held that "the rigid 'law of the place of contracting' [lex loci contractus] approach has become outmoded in resolving contract conflicts." Chrysler Corp. v. Skyline Indus. Svcs., Inc., 528 N.W.2d 698, 703 (Mich. 1995). While the court did not "abandon" the rule, it noted that the rule may be "unworkable" in certain situations and noted the factors in Section 188 of the Restatement (Second) of Conflict of Laws "provide[d] a more sound basis for moving beyond formalism to an approach more in line with modern-day contracting realities." Id. at 703, 703 n.28. Accordingly, factors to examine in that determination are: the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation and place of business of the parties. Id. at 701 n. 14 (citing Restatement (Second) of Conflict of Laws § 188).

In this case, Vanguard asserts a breach of express warranty

18

claim sounding in contract[5] and a breach of contract claim in the alternative. This Court will accordingly examine both the law of the place of the contracting rule and the factors enumerated in Section 188 of the Restatement (Second) of Conflicts of Laws to determine which state's substantive contract law governs Vanguard's claims.

There are at least two states with interests in this dispute: Ohio and Georgia, as the states where the defective trucks were acquired and the transactions took place. Under the lex loci contractus rule, either Ohio or Georgia law would apply, as those were the states where Vanguard acquired the defective trucks.

In examining the five factors under Section 188 of the restatement, it again appears that both Ohio and Georgia were the places of "contracting," the places of negotiation, and the places of performance. It would appear that Ohio is the current location of the defective trucks, as Vanguard is incorporated in Ohio and has its principal place of business in Ohio. VTNA is a Delaware corporation with its principal place of business in North Carolina. Neither Delaware nor North Carolina would have any interest in having their respective laws applied to this dispute. Additionally, it appears that the trucks were operated out of Ohio, Vanguard's place of business, and that the warranty work was

---

[5]

In its Verified Complaint, Vanguard states that VTNA's "acts . . . constitute express warranties" under Michigan Compiled laws Section 440.2313, Michigan's version of the Uniform Commercial Code governing express warranties. (Verified Compl. ¶ 39.) Michigan Compiled Laws § 440.1105(1) states that parties are free to agree on which state's laws will govern their contract; in the absence of such agreement, Michigan's U.C.C. laws will govern transactions bearing an "appropriate relation" to Michigan. As will be explained, because the transactions at issue here took place either in Ohio or Georgia, it does not appear that Michigan bears an "appropriate relation" to the transactions, such that Michigan's U.C.C. should govern Vanguard's claims.

performed in Ohio. Neither party has argued otherwise. Thus, between Ohio and Georgia, the balance thus tips in favor of having Ohio's laws govern this dispute.[6] This Court will accordingly apply Ohio law to Vanguard's claims.

### B. Vanguard's Breach of Warranty Claim[7]

VTNA argues that it should be granted summary judgment because Vanguard has failed to meet its burden under Rule 56 of the Federal Rules of Civil Procedure governing summary judgment. VTNA has objected to the evidence Vanguard has offered in opposition to the Motion for Summary Judgment, including the Menne Affidavit and the Menne Letters, because they are inadmissible on numerous grounds, leaving Vanguard with no actual evidence of any breaches of warranty (or contract), save for Vanguard's conclusory allegations.

The Court agrees and notes that even if the Menne Affidavit and Menne Letters were properly introduced and admissible evidence, those documents still do not show that VTNA breached any warranties, much less any contracts. Vanguard has not produced any contracts for purchase, lease agreements, invoices for services performed on the trucks, or any specific evidence pointing to which trucks suffered from which alleged defects, and how the defects were not corrected, repaired, replaced or remedied by VTNA. VTNA,

---

[6]

Vanguard did not attempt to argue that Georgia law should apply instead of Ohio law in this case.

[7]

Vanguard pleads a breach of contract claim in the alternative to its breach of warranty claim, however, as pointed out by VTNA, Vanguard did not enter into a purchase or lease agreement to acquire the trucks from VTNA, but from authorized Volvo dealers. It is undisputed that the trucks were actually acquired by Vanguard. Even assuming that Vanguard and VTNA would technically be in privity of contract by virtue of VTNA's extension of the express warranty to Vanguard, Vanguard's action on any breach would be for the breach of warranty.

on the other hand, has produced evidence showing that while there were approximately twenty-one trucks acquired by Vanguard between the years of 1998 and 2001, when these trucks were presented to VTNA or its dealers with problems, VTNA corrected the problems by repairing or replacing the defective parts.  Vanguard  simply has not presented any evidence of any breach on VTNA's part.

Vanguard has essentially claimed that VTNA breached: 1) the implied warranties of merchantability and fitness for a particular purpose, and 2) express warranties consisting of VTNA's, or its alleged "agents," including Kamps' and Conaghan's, representations and advertisements regarding the trucks, and the limited, written warranty which accompanied the trucks.

It is undisputed that VTNA offered, and Vanguard accepted, a limited written warranty.  The Warranty Certificate pledges that new VN model Volvo trucks will be "free from defects in material and workmanship under normal use and service up to the periods as specified[.]" VTNA's "obligation is limited to, at its option, repair or replacement of parts[.]"  VTNA's Warranty Certificate states, at the bottom of the first page, in all capital letters, and set-off from the remaining text by a box, that the warranty: "IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS OR CONDITIONS, STATUTORY OR OTHERWISE, EXPRESSED OR IMPLIED INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE." (Second Scharf Aff. Ex. B.) (Emphasis in Original.)  The Warranty Certificate likewise informs the registrant in all capital letters that "no other warranties, expressed or implied including merchantability or fitness for a particular purpose" are given.  (Id.)  Finally, the Warranty

21

Certificate states: ***NO PAYMENT OR OTHER COMPENSATION WILL BE MADE FOR CONSEQUENTIAL, INDIRECT OR INCIDENTAL EXPENSES OR DAMAGES OF ANY KIND.***"  (Id.)  (Emphasis in original.)  These statements are reiterated on the Warranty Registration page, which the purchaser or owner is required to sign to accept the terms of the limited warranty.

Vanguard argues, however, that this limited warranty should be disregarded because it was either unconscionable or it failed of its essential purpose.  Thus, according to Vanguard, any remedies available under the U.C.C., including those for the breach of the implied warranties of merchantability and fitness for a particular purpose or other express warranties such as any representations or advertisements VTNA or its "agents" made which induced Vanguard to acquire these trucks, and consequential damages thereon, would be available to Vanguard.

Under Ohio law, the sale and lease of goods is governed by the U.C.C.  Oh. Rev. Code. Ann. §§ 1302.02, 1310.02.  Accordingly, the Court will analyze Vanguard's breach of warranty claim under the Ohio's version of the U.C.C.

### 1. Limitation or Exclusion of Warranties

Parties are permitted to exclude the implied warranties of merchantability and fitness for a particular purpose under Ohio law, provided that attempts to exclude the implied warranty of merchantability actually mention "merchantability," and in written warranties, must state the exclusion "conspicuously."  Oh. Rev. Code Ann. § 1302.29(B).  Exclusions of the implied warranty of fitness for a particular purpose must be both in writing and conspicuous, however there is no statutory requirement that the

writing mention the exclusion of the implied warranty of fitness for a particular purpose, but it is sufficient to state that there are no other warranties given except for those contained on the face of the writing. <u>Id</u>.

In examining VTNA's written, limited warranty, it is clear that VTNA complied with the U.C.C.'s requirements to limit the implied warranties of both merchantability and fitness for a particular purpose. First, as to the implied warranty of merchantability, VTNA's Warranty Certificate and Warranty Registration both specifically use the word "merchantability." Second, as to both implied warranties, the Warranty Certificate and Warranty Registration conspicuously state that these warranties are excluded by so noting in all capital letters, in boldface type, and spaced apart from the other text. Additionally, Vanguard has presented no evidence, or argument, that the implied warranty limitations were inconspicuous or otherwise in contravention of the U.C.C. requirements. Accordingly, there is no genuine material issue of fact to be determined as to whether VTNA properly excluded the implied warranties of fitness for a particular purpose and merchantability.

In its Verified Complaint, Vanguard claims that VTNA, or its alleged "agents" including Conaghan and Kamps, made certain express warranties or representations upon which Vanguard relied in opting to acquire the VTNA manufactured trucks. Vanguard specifically claims that VTNA, itself or through its "agents," represented: 1) its trucks were comparable in quality and performance to its competitors and met high durability, maintenance, and downtime standards; 2) its trucks were fully tested and would meet or

surpass industry standards; 3) its trucks were improving each year and defects from the previous years had been resolved; 4) its trucks would be "defect free"; 5) its trucks would have a residual value in excess of $25,000.00 at the end of the lease terms or financing periods; 5) that VTNA would establish a nationwide used truck market as well as maintenance, repair and parts systems to support the warranties on the trucks and their value; and 6) that it would maintain a complete parts inventory at Kamps' dealerships.

Express warranties may be created by: "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain[.]"  Oh. Rev. Code Ann. § 1302.26(A)(1).  Additionally, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Id.  It is not necessary that formal "warranty" or "guarantee" language be used, or even that the seller have an intention to make a warranty for one to be made.  Id. at § 1302.26(A)(2), 1302.26(B). Affirmations of the value of the product or statements as to the seller's opinion or commendation of the product do not constitute warranties.  Id. at § 1302.26(B).

Express warranties and words limiting or excluding warranties must be construed as consistent with each other, if reasonable. Id. at § 1302.29(A).  Subject to the statutory provisions regarding parole evidence, negations or limitations of warranties are "inoperative to the extent that such construction is unreasonable." Id.  The statutory provision regarding parole evidence states that:

> [t]erms with respect to which the confirmatory memoranda
> of the parties agree or which are otherwise set forth in
> a writing intended by the parties as a final expression
> of their agreement with respect to such terms as are

24

> included therein may not be contradicted by evidence of
> any prior agreement or of a contemporaneous oral
> agreement.

<u>Id</u>. at § 1302.05.

Here, Vanguard is apparently attempting to enforce the alleged express oral warranties made by VTNA or its "agents" prior to Vanguard's agreeing to the express, limited warranty provided by VTNA during the transactions for the trucks at issue.  VTNA produced in support of its Motion the typical Warranty Certificate provided in all new truck transactions, and a confirmation of that warranty in the form of a Warranty Registration, purportedly agreed to and signed by Menne on behalf of Vanguard.  Although it had the opportunity to do so in both its opposition to VTNA's Motion and its proffered Sur-Reply Brief, Vanguard did not dispute that it had agreed to the exclusions and limitations noted in the Warranty Certificate and Warranty Registration.  As such, Vanguard may not attempt to introduce evidence of prior or contemporaneous agreements which would render the express, written warranty it agreed to "inoperative."

Accordingly, there is no genuine issue of material fact that the express, written limited warranty VTNA provided to Vanguard properly excluded any and all other express or implied warranties, such that Vanguard's only proper claim would be for breach of the express, written limited warranty.  The Court will now examine whether this express, written limited warranty was unconscionable or failed of its essential purpose, as Vanguard claims.

## 2.  Limitation of Remedies

Economic loss can be described as either direct, the losses to the defective product itself, or indirect, damages such as lost

profits stemming from the defect.  Chemtrol Adhesives, Inc. V. American Mfrs. Mut. Ins. Co., 537 N.E.2d 624, 629 (Ohio 1989). Here, Vanguard asserts it is entitled to "pierce" the allegedly failed written, limited warranty provided by VTNA to obtain consequential damages including costs for experiencing downtime, business losses, towing costs, and costs for transporting, lodging, and feeding abandoned drivers.

Ohio Revised Code Section 1302.93 specifically permits parties to modify or limit remedies "to repair and replacement of nonconforming good or parts," and to limit or exclude consequential damages.  Oh. Rev. Code Ann. § 1302.93.  Two caveats apply to this section of the U.C.C.:  1) when an exclusive or limited remedy fails of its essential purpose, remedy may be obtained under any other provisions of the U.C.C., and 2) consequential damages may not be limited or excluded when such action would be unconscionable.  Id.  The law notes that the limitation of damages "where the loss is commercial," is not prima facie unconscionable. Id.  As the Ohio Supreme Court has noted, in a commercial context, "'findings of unconscionability are rare.'" Chemtrol, 537 N.E.2d at 639 (citing Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp., 694 P.2d 198, 204 (citations omitted)).

Additionally, whether a warranty has failed of its essential purpose is typically a question of fact. Id. at 639-40 (citing Cayuga Harvester, Inc. v. Allis-Chalmers Corp., 465 N.Y. Supp. 2d. 606 (1983), Johnson v. John Deer Co., 306 N.W.2d 231 (S.D. 1981)). Where there is no evidence to indicate that the warrantor was either unable or unwilling to repair or replace a defective part within a reasonable amount of time, "it would be unreasonable as a

matter of law to conclude that the remedy failed of its essential purpose." Id. at 640.

In this case, again, Vanguard has failed to meet its evidentiary burden under the summary judgment standard.  VTNA has presented undisputed evidence that when Vanguard requested service on the trucks, it repaired or replaced the parts in accordance with its obligations under the warranty.  Vanguard offered nothing to dispute this but mere conclusory allegations that VTNA's warranty "failed of its essential purpose."

To support its legal argument, Vanguard relies heavily on Goddard v. Gen. Motors Corp., 396 N.E.2d 761 (Ohio 1979).  In Goddard, the plaintiff claimed that General Motors and Bass Chevrolet, Inc. breached their warranties on a new car the plaintiff purchased from Bass.  Id. at 761.  General Motors warranted that it would repair any defects in material or workmanship of the vehicle for twelve months or 12,000 miles.  Id. The warranty excluded consequential damages.  Id.  The court noted that the evidence showed that the car's transmission failed and after four attempts were made to repair it, it was replaced (and subsequently repaired again), the car vibrated excessively, the starter failed twice subsequently causing a dealer to replace the starter with a factory rebuilt unit, the fuel pump failed, the car suffered from electrical problems necessitating the replacement of the alternator, the water pump was replaced, as the plaintiff was driving the car, numerous fuses started to blow and the vehicle stalled, and a new thermostat needed to be installed so that the car would not overheat.  Id.  Finally, the plaintiff "gave up" on the car.  Id.  The Ohio Supreme Court held that:

27

> [w]here a new car express warranty limits a buyer's remedy to repair and replacement of the defective parts, but the new car is so riddled with defects that the limited remedy of repair and replace it fails its essential purpose, the buyer may institute an action to recover damages for breach of warranty under R.C. 1302.88(B) and, in a proper case, incidental and consequential damages under R.C. 1302.88(C) and 1302.89.

Id. at Syllabus. The court found that General Motors had attempted to limit the buyer's remedy to repair and replacement of defective parts. Id. at 764. The court noted that "in most cases a limited remedy may be fair and reasonable," but when a "seller is unable to fulfill its warranted obligation to effectively repair or replace defects in goods . . . the buyer is deprived of the benefits of the limited remedy and it therefore fails its essential purpose." Id. (citations omitted).

Here, VTNA has presented evidence that it performed warranty service and repaired or replaced defective parts on the trucks Vanguard acquired. Vanguard has failed to show that VTNA was unable or unwilling to remedy any defects in the trucks or that the repairs or replacements were ineffective.

The Court has reviewed the evidence regarding the warranty claims Vanguard made, listed in Exhibit A to Scharf's Affidavit, submitted with VTNA's Motion for Summary Judgment. Exhibit A is a spreadsheet attached to Scharf's Affidavit setting forth a detailed listing of the warranty service records for the trucks in question. Of the twenty-one trucks on which warranty claims were made, it appears that fourteen had no repeat problems or other complaints that were unable to be fixed.[8]

---

[8] These are trucks with serial numbers: 238772, 238773, 308913, 308914, 771016, 771017, 771018, 771020, 771023, 782611, 782614, 782615, 782616, and

Of the seven remaining trucks, it appears that five had a "repeat" warranty claim listed.  Exhibit A lists a warranty claim on or about August 19, 1998, for truck number 771019 which states that the right side of the hood was not staying latched.  The notes state that these latches were adjusted.  On or about October 27, 1998, there is a second note that the right side of the hood was not staying shut, and the hood alignment was adjusted, greased and rechecked.  There were no further hood alignment issues reported on this truck.

Truck number 771021 also apparently had a hood latching issue; Exhibit A notes that the latches were adjusted on or about August 20, 1998, and specifically the left hood latch was adjusted and checked on or about August 27, 1998.  There were no further hood latching issues reported for this truck.  Exhibit A also lists two warranty claims for "vibrations" on truck number 771021 , first on or about August 20, 1998, for "bad vibration between 55-65."  The note states that the "air ride height" was adjusted.  The note on or about August 27, 1998, states that the truck was still apparently vibrating and that the "air ride height" was set incorrectly.  The "leveling valve dimension" was adjusted.  The note states the vehicle was test driven and no vibrations were found.

---

782617.  While these trucks may have had notations listing warranty claims on different truck parts (for example, truck number 238772 lists one claim for the "front drive angle" where "shims" were installed; "air leaks" where a valve was replaced; a "coolant leak," where the fitting was resealed and the coolant was refilled; a "shock bolt" missing, where the bolt was replaced; and the air bag was leaking, and was corrected) they do not list more than one warranty claim on any one truck part.  (Second Scharf Aff. Ex. A.)

Exhibit A lists has two notes on truck number 771022 that read "[g]oodwill to cover installation of stronger mudflap[s]," the first is listed on or about August 24, 1998, and the second is listed on or about August 28, 1998. There are no additional notes regarding the mudflaps for this truck.

The notes in Exhibit A indicate that truck number 782613 had three or possibly four transmission repairs on or about May 20, 1999. The first note states that the truck "had leaks at transmission." A fitting leak was found and the fitting was replaced. The next note states that the truck "still had air leaks." An "air line" leak on the top of the transmission was found. The note states that the technician cut off a small piece of the line and reinstalled it. The third notation states that after replacing a valve, the truck still had leaks. Three air lines were found to be leaking. The lines and fittings were removed. One fitting was replaced, the other two were cleaned and reinstalled. Finally, the fourth note states that the truck was "losing air after sitting a short time." The range valve was found to be leaking and was replaced. No further transmission claims were reported for this truck.

Finally, Exhibit A lists two notes regarding fixing the tail lights on truck number 782617. The first on or about March 31, 1999, states that the tail lights were not working properly. The wire along the frame rail to the tail lamps was broken, and was replaced. The second note, on or about April 20, 1999, states that the tail lights were inoperative and that the technician checked for power and ultimately "follow[ed] [the] harness up to connectors." While this notation does not state what the

30

technician did, if anything, to the connectors, there are no other notations for inoperative tail lights listed for this truck.

One truck, number 782612, has a note listed on or about June 1, 1999, stating "latch in bunk behind seat will not hold.  Tried to repair, could not.  Replace 'ldrawer.'" There are no other notes about a defective bunk latch for this truck.

Finally, Exhibit A notes that certain charges were not covered by VTNA's warranty, including presumably, "truck rental, turbo, misc. parts/labor," on truck number 238771.  There were no repeating warranty claims on this truck.

In summary, upon reviewing the evidence provided by VTNA with respect to the warranty claims Vanguard made on the trucks, it appears that VTNA performed the requested repairs in accordance with the terms of the warranty.  None of the claims or alleged defects appear to be so severe or repetitive in nature that they rendered that truck "riddled with defects," so as to cause the limited warranty to fail of its essential purpose as did the car at issue in <u>Goddard</u>.

Moreover, Vanguard has not objected to the authenticity or accuracy of this evidence, nor has it responded by pointing to any specific evidence, within VTNA's documents or otherwise, of defects or component failure which VTNA was unable or unwilling to fix. Therefore, VTNA is entitled to summary judgment on Vanguard's breach of warranty claims as there is no evidence in the record to show that VTNA failed to fulfill its obligations under the express, limited warranty.

**VI. <u>Conclusion</u>**

For the reasons stated herein, VTNA's Motion for Summary Judgment on all of Vanguard's claims (Doc. 56) is hereby GRANTED. Vanguard's Motion for Leave to File a Sur-Reply Brief in this matter (Doc. 65) is GRANTED IN PART and DENIED IN PART.  The Clerk of Court shall enter final judgment in this matter in favor of VTNA according to this Order.

It is so ORDERED.


                    s/James L. Graham
                    JAMES L. GRAHAM
                    United States District Judge

DATE: August 14, 2006